GROVE PRESS, INC.

v.

CITY OF PHILADELPHIA.

CITY OF PHILADELPHIA

v.

19TH AND CHESTNUT STREET COR-PORATION, David Holt, Donald S. Rugoff, Rose Rugoff and Stanley S. Silverman.

Civ. A. Nos. 69–972 and 69–934.

United States District Court
E. D. Pennsylvania.

May 20, 1969.

Aaron M. Fine, Harold E. Kohn, Thomas K. Gilhool, of Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for plaintiffs.

Levy Anderson, Deputy City Solicitor, George J. Ivins, Asst. City Solicitor, of the City Solicitor's Office of the City of Philadelphia, for defendants.

## OPINION

MASTERSON, District Judge.

On April 23, 1969, the City of Philadelphia filed a complaint in equity, No. 5380, April Term, 1969, in the Court of Common Pleas, Philadelphia, Pennsylvania, against the defendants, 19th and Chestnut Street Corporation, David Holt, Donald Rugoff, Rose Rugoff, and Stanley S. Silverman. The corporate defendant and the individual defendants are the owners and operators of the Cinema 19 motion picture theatre which is located at 19th and Chestnut Streets in Philadelphia. Commencing on April 23rd and continuing until the present date the defendants have been exhibiting at the Cinema 19 a film entitled "I Am Curious—Yellow", a Swedish film of controversial nature which has been received in the United States with mixed aesthetic and legal reviews.[1]

In its complaint the City charges that the defendants' exhibition of "I Am Curious" constitutes "* * * a public nuisance as well as a display of public obscenity and pornography." Complaint, ¶ 13. The City requests the state court to preliminarily and permanently

---

1. Pursuant to Title 19 U.S.C. § 1305, the United States instituted suit in the United States District Court for the Southern District of New York to prohibit importation of "I Am Curious—Yellow". After the importer's (Grove Press') motion for summary judgment was denied a jury held the film obscene— a finding reversed on appeal by the Court of Appeals for the Second Circuit. See, United States of America v. A Motion Picture Entitled "I Am Curious—Yellow", 285 F.Supp. 465 (S.D.N.Y., 1968), rev'd 404 F.2d 196 (C.A.2, 1968). The Government did not appeal the Second Circuit's holding.

Since the conclusion of the New York case "I Am Curious" has been displayed continually in New York City and the film has been alternately praised and condemned. See, e. g., "Pro" — "* * * a sober, earnest, mildly humorous sociological assault * * *", Ernest Schier, Philadelphia Bulletin, April 24th, p. 24, "* * * a wise, serious, sometimes deadpannedly funny movie about the politics of life * * *", Vincent Canby, New York Times Entertainment Section, March 23rd, p. 1; "Con" — "* * * the bottom of the garbage dump", Rex Reed, New York Times Entertainment Section, March 23rd, p. 1.

enjoin this nuisance because the "* * * film is designed to appeal to a prurient interest in sex; is patently offensive in that it affronts the contemporary community standards relating to the description or representation of sexual matters * * * is a graphic portrayal of sexual intercourse between a male and female under varying circumstances including scenes of oral-genital activity * * * is for the purpose, among others, of promoting the vilest behavior in adults as well as minors * * * is wholly (sic) devoid of artistic values and is without any redeeming social or entertaining value * * * (and) would cause irreparable harm and damage to the morals of the citizens of the City of Philadelphia * * *". Complaint, ¶s 9, 11, 12 and 14. The City supports its complaint with an affidavit sworn to by Frank A. Scafidi and Joseph Browne, the Chief Inspector and Staff Inspector respectively of the Philadelphia Police Department, municipal officers who twice have viewed the film and who state that in their opinions the film is obscene.[2] It is clear from both the complaint and the affidavit that the City's position that the showing of this film constitutes a nuisance is grounded upon no allegation as to the nature of the film or its manner of exhibition *other than* the allegation that the film is obscene, and that, in effect, the City's prayer to enjoin a nuisance is actually a prayer to enjoin the exhibition of an allegedly obscene film.[3]

Upon consideration of the complaint, and the affidavit and exhibits attached to it, the Court of Common Pleas on April 23rd granted a rule upon the defendants to show cause why a preliminary injunction should not issue on April 29th restraining the continued exhibition of "I Am Curious". The Complaint, and the rule to show cause, were served upon the defendants on April 24th. No further proceedings have been conducted in the state court due to the filing on April 28th of defendants' Petition for Removal of the case to this Court.

The defendants advance their petition for removal pursuant to Title 28 U.S.C. §§ 1441 and 1443, and argue that removal is appropriate because the matter in controversy exceeds the sum of $10,000.-00, and because the claim asserted by the City arises under the Constitution and laws of the United States and is a claim over which this Court has original jurisdiction pursuant to Title 28 U.S.C. §§ 1331, 1343(3), and 1343(4). In their petition the defendants also urge that removal is supported by a consideration of the following factual circumstances: (1) the equity complaint was filed by the City Solicitor of the City of Philadelphia, contrary to the provisions of Pennsylvania statutory law, Title 18 P. S. § 4524; (2) the City Solicitor instituted this action despite knowledge that the Court of Appeals for the Second Circuit had held the film not to be obscene; (3) the affiants to the complaint allege that the film is obscene despite their knowledge that the Court of Appeals decided to the contrary; and (4) the institution of the suit has had a "chilling effect" on the defendants' First Amendment rights. In an amendment to their petition for removal the defendants further assert that the Pennsylvania Obscenity Law, Title 18 P.S. § 4524, is on its face unconstitutional, and that the City's failure to cite this statute "* * * constitutes a subterfuge designed to disguise the fact that it proceeds in state court on a facially unconstitutional statute." Petition for Removal, ¶ 11.

On April 29th the City, arguing that its action is not one which arises under

---

**2.** As further evidence of the alleged obscenity of "I Am Curious" the police officers have attached to their affidavit fourteen still photographs of scenes in the movie.

**3.** Counsel for the City conceded twice during oral argument before this Court that this is the essential nature of its suit. (Argument Sur Motion to Remand, May 2, 1969, N.T., 24–25, and May 9, 1969, N.T., 162–163).

the Constitution or the laws of the United States, and, therefore, does not constitute a claim removable to the federal courts, filed a motion to remand. Argument on the motion to remand was conducted on Friday, May 2, 1969. Since that time the defendants, in order to comply with the state rules governing the procedure to be followed in equity cases, have filed a motion to dismiss the City's complaint.

On May 1, 1969, Grove Press, Inc., a New York corporation which is the importer and national distributor of this motion picture, filed an independent action in this Court, naming the City of Philadelphia as a defendant. Grove claimed federal jurisdiction of its action pursuant to Title 28 U.S.C. § 1332, diversity of citizenship, Title 28 U.S.C. § 1331, the existence of a federal question, and Title 28 U.S.C. § 1343, on the theory that this is a civil rights action under Title 42 U.S.C. § 1983. Grove has asked that this Court preliminarily and permanently enjoin the City of Philadelphia, and its officers and agents, from further prosecutions, proceedings or acts interfering with the continued exhibition in Philadelphia of "I Am Curious". It also requests this Court to render a declaratory judgment under Title 28 U. S.C. §§ 2201, 2202, that "I Am Curious" is not obscene but rather artistic expression protected from governmental interference by the First and Fourteenth Amendments to the United States Constitution.

In its complaint Grove claims that the pendency of the City's suit in the state court has had, and continues to have, both a "chilling effect" on its constitutional rights of free expression and an irreparably detrimental impact upon its contractual relations with exhibitors in cities other than Philadelphia. In support of these claims Grove offered testimony at a hearing conducted here on May 6, 1969, and both parties argued the merits of the case on Friday, May 9, 1969.

## II

Although Grove Press is not a named party in Civil Action No. 69–934, which is the case sought to be removed here, it has made an oral motion pursuant to Rule 42 of the Federal Rules of Civil Procedure to consolidate the action it has instituted here, i. e. Civil Action No. 69–972, with Civil Action No. 69–934. Because of the common questions of fact and law involved in both cases consolidation of these cases would seem desirable as a practical matter. But since the Court has concluded that the action started in the state court is not properly removable here, see infra, p. 289, it seems clear that this Court can not acquire jurisdiction over that case by consolidating it with a case over which it unquestionably has jurisdiction. Accordingly, Grove Press's motion to consolidate is denied. Since the Court's holding in the case over which it has jurisdiction has a direct effect on the case which has been removed, however, the Court has concluded that it would be best to decide both cases in a single opinion.

Having considered the legal and factual contentions of all parties to these actions the Court has decided that: (1) in Civil Action No. 69–972 the defendant's motion to dismiss will be denied, the plaintiff's request for a preliminary injunction will be granted, and the plaintiff's request for further declaratory relief will be denied; and (2), in Civil Action No. 69–934 the plaintiff's motion to remand will be granted conditionally in the event that the injunction granted in Civil Action No. 69–972 is subsequently dissolved.

## GROVE PRESS V. CITY OF PHILADELPHIA

Grove Press is incorporated in the State of New York and has its principal place of business in New York City. The testimony makes it clear that the amount in controversy exceeds $10,000.-00. Hence this Court has jurisdiction of Civil Action No. 69–972 as a matter of

diversity jurisdiction. See, Title 28 U.S.C. § 1332. It is clear as well that there is federal jurisdiction over this case pursuant to Title 28 U.S.C. §§ 1331, 1343, since Grove Press has charged that the City's attempt to prohibit the exhibition of "I Am Curious—Yellow" constitutes a violation of Title 42 U.S.C. § 1983 and a violation of the First and Fourteenth Amendments to the Constitution.

■ As noted supra p. 284, Grove Press has requested this Court to grant it both injunctive and declaratory relief. Primarily, Grove seeks this relief for the purpose of vindicating its alleged constitutional right of freedom of expression as that right has been infringed by the pendency of the City's state equity action. Although Grove is not a party to the state suit its commercial relationship with the defendants in that action confers standing upon it to maintain this action. See, Kingsley International Pictures Corp. v. Blanc, 396 Pa. 448, 455, 153 A.2d 243 (1959). Grove also seeks relief in this Court for purposes of preventing the financial injury which it alleges has, and will, follow from the institution of the City's suit against the local exhibitor.

Grove contracted with the 19th and Chestnut Street Corporation which operates the Cinema 19 Theatre in Philadelphia, for an exclusive showing of "I Am Curious—Yellow" for a minimum period of six weeks. As consideration for its license to Cinema 19 Grove Press receives a percentage of the theatre's gross receipts. It is therefore apparent that Grove Press has a continuing direct financial interest in exhibition of this film, the value of which will vary in relation to the number of persons who view the film in any given week. Grove can expect to derive substantial revenue from the exhibition of "I Am Curious—Yellow" at the Cinema 19 for a period of time significantly longer than six weeks since the contract provides for continuing exhibitions at that theatre until receipts in any one week fail to equal or exceed $17,000.00 and since current receipts are in the order of $80,-000.00 a week.

This Court has concluded that the complaint filed by the City of Philadelphia in the state courts is *on its face* offensive to the constitutional rights of Grove Press. For reasons discussed below, Grove Press is therefore entitled to an injunction prohibiting the City of Philadelphia both from continuing its current civil prosecution in the state courts, and from instituting any future actions to prohibit the exhibition of the film "I Am Curious—Yellow" on the ground that such exhibition constitutes a "nuisance".

*Abstention*

■ The City has urged that this Court abstain from ruling on Grove's request for preliminary injunction because of the pendency of the proceedings in the state court. Although these proceedings involve different parties, the City urges that the same issues raised in this case can and should, be decided by the state court in that proceeding.

In Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, the court held that it was improper for a federal court to abstain from ruling on a complaint seeking a declaratory judgment and an injunction where the allegation was that a statute regulating First Amendment rights was over-broad on its face. The court there made it clear that where the plaintiff's allegations were in substance that the over-breadth of a state regulatory scheme itself had a chilling effect on First Amendment rights, the Federal District Court was required to examine this claim on its merits and not abstain. Although a consideration of the Pennsylvania Obscenity Statute is not necessary for the result which we reach in this case, nonetheless the analogy between an over-broad statute which attempted to regulate First Amendment rights and an administrative attempt to regulate them on the ground that they constitute public nuisances is clear enough to require us to examine the merits of the plaintiff's claim.

*Request For Injunctive Relief*

The Supreme Court of the United States has repeatedly held that the First Amendment guarantee of freedom of speech which has been incorporated as a limitation on state action through the Fourteenth Amendment, prevents the states from interfering with freedom of speech except under the narrowest circumstances:

> "The fundamental freedoms of speech and press have contributed greatly to the development and well-being of our free society and are indispensable to its continued growth. Ceaseless vigilance is the watchword to prevent their erosion by Congress or by the States. The door barring federal and state intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests. It is therefore vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest." Roth v. United States, 354 U.S. 476, 488, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1956).

See also, Fiske v. Kansas, 247 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927), Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), and Thornhill v. Alabama, 310 U.S. 88, 101–102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). And, of course, motion picture films have been classified as within the ambit of First Amendment protection. See, Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098 (1951).

■ The result of this trend of decision has been that almost all state censorship laws which have been challenged have been found to be unconstitutional prior restraints on First Amendment rights. See Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 682–683, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1967), and cases cited therein. And, although states may attempt to regulate obscenity, which has been held to be beyond the protection of the First Amendment, see, Kingsley International Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1969), Times Film Corp. v. City of Chicago, 365 U.S. 43, 44, 49–50, 81 S.Ct. 391, 5 L.Ed.2d 403 (1960), and Roth, supra, 354 U.S. at 484, 77 S. Ct. 1304, even in this area a state is "* * * not free to adopt whatever procedures it pleases * * * without regard to the possible consequences for constitutionally protected speech", Marcus v. Search Warrants, 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1960). Thus where a state seeks to exercise its power to prevent dissemination of allegedly obscene material it must establish precise objective standards by which the work may be judged, as well as procedural safeguards adequate to insure that constitutionally-protected expression will not be unduly curtailed. See, Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), and Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964).

■ It follows *a fortiori* from those cases in which federal courts have held invalid state *statutory* schemes regulating obscenity that suppression of expression on the "common law" ground that it is a public nuisance is necessarily prohibited by the First and Fourteenth Amendments. This conclusion has been recognized by the Supreme Court since the germinal case of Cantwell v. Connecticut, 310 U.S. 296, 307–308, 60 S.Ct. 900, 84 L.Ed. 1213 (1939), in which the Court overturned a state conviction for the common law offense of breach of the peace when the state initiated its prosecution because of the defendant's expression of inflammatory religious views on a public street. In *Cantwell* the Court emphasized the important distinction be-

tween regulating speech and expression pursuant to a state statute narrowly drawn to prohibit a particular evil and attempting such restriction "* * * on a common law concept of the most general and undefined nature." The Court explained the critical defect in the former procedure in the following language:

> "Here we have a situation analogous to a conviction under a statute sweeping in a great variety of conduct under a general and indefinite characterization and leaving to the executive and judicial branches too wide a discretion in its application." Ibid., 310 U.S. at 308, 60 S.Ct. at 905.

In seeking to enjoin exhibition of "I Am Curious—Yellow" the City of Philadelphia concededly has not proceeded under the Pennsylvania Statute which authorizes the regulation of the dissemination or exhibition of obscene materials. See, Title 18 P.S. § 4254 (Supp.1969).[4] This Statute may be an appropriate state legislative attempt to define specifically those kinds of materials which may be prohibited as obscene and, as narrowed by state judicial construction, it may establish a constitutionally valid scheme for proceeding against those who allegedly distribute and/or sell obscene material. See, Commonwealth v. Baer, 209 Pa.Super. 349, 227 A.2d 915 (1967). Although counsel for the City has suggested that reference to this Statute could be made in the course of the state proceeding, such reference, at best, would only be for the limited purpose of presenting some evidence of the state standard of obscenity and would not cure the substantial constitutional problems which characterize the nuisance proceeding.

The City's attempt to enjoin the continued exhibition of "I Am Curious—Yellow" on the ground that such exhibition is a nuisance is a procedure repugnant to the Due Process Clause of the Fourteenth Amendment in two respects; first, the substantive standard by which the alleged obscenity of the movie is to be judged, i. e., whether it is a "common law nuisance" is so broad as to sweep within its purview not only properly regulated activities but also constitutionally protected activities; and secondly, the same standard is so vague as to be meaningless to those whose activities are sought to be measured by that standard.

In Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the Supreme Court explained, in invalidating a state statutory scheme analogous to the state common law scheme here, why governmental regulation of speech must be carried out pursuant to precisely-worded, narrowly-drawn standards. It proscribed overly broad standards by noting that,

> "* * * a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade an area of protected freedoms.", Ibid., 389 U.S. at 250, 88 S.Ct. at 396.

Even if the standard of regulation is adequately narrow, however, it still must be precisely written to conform with the constitutional requirements, because otherwise "* * * men of common intelligence must necessarily guess at its meaning and differ as to its application." Ibid., 389 U.S. at 249–250, 88 S. Ct. at 396. Measuring speech by the standard of common law nuisance fails to avoid either of those significant constitutional objections. See, Near v. Minnesota, 283 U.S. 697, 707, 51 S.Ct. 625, 75 L.Ed. 1357 (1930).

■ Accordingly, the City of Philadelphia's pending injunction action against the exhibitor of "I Am Curious

---

4. § 4524(a) provides, in summary, that it is a misdemeanor to exhibit or show to any person * * * any obscene drawing, photograph or image or any article of an obscene nature which crime is punishable by a sentence of up to two years imprisonment or by a fine * * * § 4254(g) provides, in pertinent part, that the *District Attorney* can enjoin the exhibition of obscenity.

—Yellow" on the ground that the exhibition of this film constitutes a public nuisance must be enjoined as a violation of the First and Fourteenth Amendments to the United States Constitution. Indeed, the evil inherent in this procedure attached at the very inception of the action because permitting state officers the power to decide, without reference to any objective criteria, which of innumerable forms of expression they intended to suppress on the grounds that it constituted a "nuisance" would create the "chilling effect" on the exercise of freedom of speech which the Supreme Court has held the First Amendment was designed to prevent. Cf. Dombrowski v. Pfister, 380 U.S. 479, 494, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and Cameron v. Johnson, 390 U.S. 611, 619, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Thus, even if Grove Press had not established that it suffered substantial economic injury it would be entitled to an injunction because of the impairment of its constitutionally guaranteed rights which flowed from the very commencement of the City's suit.

The Pennsylvania Procedural scheme for disposition of equity matters in the ordinary course poses an additional threat to the freedom of expression involved in this film. The state court, as is customary, issued a rule to show cause why a preliminary injunction should not issue as of April 29, 1969. No rule or procedure or statute of the Commonwealth restricts the state court's discretion in the granting, continuance, or dissolution of such an injunction once a preliminary hearing is held. See, Pa. R.C.P. Rule 1531, 12 P.S. Appendix. Nor is there an expedited appeal or an unconditional right to supersedeas or a fixed time within which either trial or appellate courts must render their judgments. Yet "* * * the exhibitor must be assured by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." Freedman v. Maryland, 380 U.S. 51 at pp. 58–59, 85 S.Ct. 734 at p. 739, 13 L.Ed.2d 649. See also Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469, where an injunction procedure incorporating such guarantees was upheld. The lack of procedural safeguards in the course pursued by the City merely serves to underscore its potential threat to the exercise of First Amendment rights.

*Motion to Dismiss*

The City filed a motion to dismiss Civil Action No. 69–972 on the ground that Title 28 U.S.C. § 2283 prohibits a Federal Court from enjoining pending proceedings in a state court. It is arguable that § 2283 does not apply here since Grove Press is not a party to the action in the state courts. More importantly, however, although the Supreme Court as yet has not decided the question, see, *Dombrowski*, supra, 380 U.S. at 484, f. n. 2, 85 S.Ct. 1116, the Court of Appeals for the Third Circuit has held that § 2283's prohibition does not apply where the federal court action is predicated on Title 42 U.S.C. § 1983 which by its terms specifically authorizes the granting of an injunction to stay state court proceedings. See, Cooper v. Hutchinson, 184 F.2d 119 (C.A.3, 1950). Accordingly, the City's motion to dismiss Civil Action No. 69–972 is denied.

*Request for Declaratory Relief*

In addition to its prayer for injunctive relief Grove Press has requested this Court to enter a judgment declaring that "I Am Curious—Yellow" is not obscene. Since this Court has granted Grove Press an injunction which will resolve the current controversy it does not believe that it would be appropriate, in the absence of any continuing controversy, to go further and render what would constitute an advisory opinion as to the obscenity vel non of "I Am Curious—Yellow". Grove did present testimony

here which was relevant to a determination of this issue, but this evidence was advanced in support of Grove's contention that the film was so clearly *not* obscene that any state interference with its exhibition would reflect a bad faith exercise of state power and therefore be subject to this Court's injunctive powers.

This Court's decision that the City's proceeding against the exhibition of "I Am Curious—Yellow" is constitutionally defective and must be enjoined is not based on a conclusion that the City proceeded against the film in bad faith. Indeed, the court has concluded that the question of the film's non-obscenity is not so clear that the mere institution of a proceeding seeking to enjoin it under a properly drawn obscenity statute would be violative of federal constitutional rights.

For similar reasons it would not be appropriate to enter a declaratory judgment at this time as to the legality of the film when measured under the provisions of the Pennsylvania Obscenity Statute. As has already been noted above, the City's proceeding which has been challenged here was not instituted pursuant to the statute and, in fact, the City's failure to base is action against the film on that statute was itself a critical factor supporting the granting of the plaintiff's request for an injunction. Moreover, the legality of the film, as determined by reference to the state statute, is, at least in the first instance, a matter of state law which should be left for initial determination by the state courts.

In summary, we do not hold that this film is constitutionally protected but only that the City may not attempt to prohibit its exhibition under the theory of common law nuisance.

### CITY OF PHILADELPHIA VS. 19th AND CHESTNUT, ET AL

In Civil Action No. 69–934 the defendants request removal here pursuant to the provisions of Title 28 U.S. C. § 1443 which provide that:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law,"

or, alternatively, pursuant to the provisions of Title 28 U.S.C. § 1441, which read in pertinent part:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed * * *.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable * * *."

Both the literal language of these provisions and extensive juridical interpretation of that language indicate that removal of this case from the state court would be improper.

*Removal Under § 1443*

In support of their argument for removal pursuant to Title 28 U.S.C. § 1443 the defendants note initially that the Supreme Court consistently and emphatically has declared that First Amendment freedoms, as subsumed within the Fourteenth Amendment's guarantees of due process of law and equal protection of the law, should be accorded a preferred position of protection from State interference. See, NAACP v. Button, 371 U. S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405

(1963), and *Bantam Books*, supra. They urge that this means that quick and effective federal judicial remedies *must* be granted parties whose exercise of First Amendment rights is challenged either by a state's allegedly unconstitutional procedures in interfering with those rights, see, e. g., Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), and *Freedman*, supra, or by a state's allegedly unconstitutional substantive standards for measuring the legality of the exercise of those rights. See, e. g., Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), and A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). The defendants conclude that removal pursuant to § 1443 must be provided in all cases such as the present one where parties defend themselves against state prosecution on the basis that their challenged acts are constitutionally protected.

Although the general constitutional propositions advanced by the defendants are incontrovertible, they do not lead to the conclusion that removal of this case pursuant to § 1443 is proper. In its most recent interpretations of § 1443 the Supreme Court unequivocally excluded from the coverage of § 1443's critical phrase, "* * * a right under any law

providing for the equal civil rights of citizens * * *'', broad First Amendment rights and Due Process rights such as those relied upon by the defendants:

"* * * we conclude that the phrase * * * must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, *the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443,* because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands." Georgia v. Rachel, 384 U. S. 780, 792, 86 S.Ct. 1783, 1790, 16 L. Ed.2d 925 (1966) (Emphasis Supplied).

See also City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Despite these recent holdings of the Supreme Court, defendants urge this Court to reconsider the issues decided adversely to their position by the Supreme Court and, in effect, to ignore those holdings.[5]

■ Initially defendants urge that reconsideration of *Rachel* and *Peacock* is appropriate because it is possible that

---

5. The defendants have also contended that the rights they sought to protect in this action were rights included among those covered by § 1443 even as that provision was construed by the Supreme Court in *Rachel* and *Peacock* in that they were rights provided for "* * * in terms of * * * equality." Defendants urged that the constitutional right which was violated by the City's proceedings was their right to equal protection of the law since "I Am Curious-Yellow" had been held to be constitutionally protected by the Court of Appeals for the Second Circuit. Since that holding would insure the exhibition of the film in all areas encompassed by the Second Circuit, the defendants contended that they would be deprived of equal protection of the law were this Court to fail to give res judicata effect to the Second Circuit decision.

The doctrine of res judicata is inapplicable to this case primarily because application of the doctrine would involve this Court in impeding the proper exercise by at least one independent sovereignty of its power to prohibit the exhibition of allegedly obscene material within its jurisdiction. The defendants have cited no case in support of their proposition that a prior federal holding regarding the obscenity of a movie precludes subsequent state proceedings against that film when the state is not within the jurisdiction of the federal court.

Furthermore, defendants' attempt to include their case among those held removable in *Peacock* and *Rachel* must fail because those cases at least limit § 1443 to questions involving equal *civil* rights—a phrase which clearly would not include the types of rights which the defendants allege are involved here.

ial

the Supreme Court itself, as presently constituted, would reverse those holdings. Even if a suggested change in decision by the Supreme Court were predictable, which is not the case here, the simple answer to defendants' contention is that it is not this Court's function to predict reversals of Supreme Court decisions based upon changes in personnel of the Court.

■ The defendants urge further, however, that the Supreme Court's decisions in *Peacock* and *Rachel* are inconsistent with Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). See, City of Chester v. Anderson, 347 F.2d 823 (C.A. 3, 1965) (Dissenting Opinion by Biggs, Kalodner and Freedman). However true this proposition might be, it is of little weight in view of the fact that the Supreme Court did in fact render its decisions in *Rachel* and *Peacock* after *Dombrowski*, and, further, justified its limiting construction of § 1443 by noting that there were other federal remedies, such as that established in *Dombrowski* itself, available to petitioners who are unable to remove a state case to federal court. See, *Peacock*, supra, 384 U.S. at 829, 86 S.Ct. 1800. This Court has the duty to interpret and apply federal and constitutional law in a fashion consistent with Supreme Court holdings and this duty can be performed here *only* by denying the defendants' request to remove under § 1443. See also, Reynolds v. State of Alabama, 277 F.Supp. 220, 221 (S.D.Ala., 1967).

*Removal Under § 1441*

In urging removal pursuant to the general removal statute, Title 28 U.S.C. § 1441, defendants' critical contention is that a federal question is an essential element in the City's claim in the state courts and hence the state action is one which is " * * * founded on a claim or right arising under the Constitution, treaties, or laws of the United States * * *." In support of this position the defendants urge that the constitutional status of an allegedly obscene work must be determined on the basis of a national standard which most properly can be applied by a federal court, and, that the petitioners should " * * * not be consigned to the vagaries of the state courts," when a federal court has already determined that the work attempted to be challenged in the state court is not obscene.

In opposing removal under Title 28 U.S.C. § 1441, and urging its motion to remand, the City relies most strongly upon Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The City emphasizes *Gully's* oft-quoted language as the appropriate standard for determining the removability of a state action:

> "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action * * * such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * (T)he controversy must be disclosed on the face of the complaint, unaided by the answer or petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction insofar as it goes beyond a statement of plaintiff's cause of action and anticipates or replies to a probable defense." *Gully*, supra, 299 U.S. at 112–113, 57 S.Ct. at 97.

The defendants distinguish *Gully* by noting that there the Court was reluctant to remove because in that case " * * * a question of federal law is (merely) lurking in the background * * *", 299 U.S. at 117, 57 S.Ct. at 100, whereas here,

> "(t)he right of petitioner to recover under their complaint will be sustained if the Constitution and laws are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction." Bell v. Hood, 327 U.S. 678, 683, 685, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1945).

292

The defendants cite statements to similar effect in Wheeldin v. Wheeler, 373 U.S. 647, 659, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (Dissent by Brennan, Black and Warren), Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199, 41 S. Ct. 243, 65 L.Ed. 577 (1921), Osborn v. Bank of the United States, 9 Wheat. 738, 822, 6 L.Ed. 204 (1824), and Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 379, 5 L.Ed. 257 (1821).

Although it is likely that the alleged obscenity of "I Am Curious—Yellow" will be the critical issue in the state court proceeding, this Court nevertheless can not conclude that removal to the federal court of this type of case either is contemplated by Title 28 U.S.C. § 1441 or supported by the policy considerations relevant to the removal problem.

The most recent federal cases supporting removal which are relied upon by the defendants, e.g. Avco Corp. v. Aero Lodge No. 735, I.A.M. and A.W., 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed2d 126 (April 8, 1968), Ivy Broadcasting Co. v. American Tel. and Tel. Co., 391 F.2d 486, 489 (C.A. 2, 1968), and Sylgab Steel and Wire Corp. v. Strickland Transportation Co., 270 F.Supp. 264 (E.D.N.Y., 1967), are all distinguishable from this case in at least one significant respect—they involved matters of legal dispute about which Congress had evidenced much concern and over which Congress, through the passage of comprehensive legislation, had exercised its pre-emptive authority over the state legislatures. For example, in Ivy, supra, removal was sustained primarily because the Court concluded that resolution of the plaintiff's claim for breach of contract in the rendering of interstate telephone service by the defendant-carrier necessarily depended upon interpretation of matters of federal common law, as such law developed to fill the interstices of a comprehensive federal statutory scheme. Similarly, the District Court in Sylgab, supra, 270 F. Supp. at 269, upheld removal because " * * * of the comprehensive nature of federal substantive regulation of

the rights of shippers and carriers with respect to damaged goods. * * *."

The most expansive standard yet relied upon by a federal court in determining the removeability of a state action appears in Ivy:

"(W)hether the complaint is for a remedy expressly granted by an act of Congress or otherwise 'inferred' from federal law, or whether a properly pleaded 'state created' claim itself presents a 'pivotal question of federal law', for example because an act of Congress must be construed or 'federal common law' governs some disputed aspect of the claim."

The City's prayer for an injunction in the state courts neither constitutes a request " * * * for a remedy expressly granted by an Act of Congress * * *" nor does it necessarily require the construction of a Congressional Act or federal common law. The City derives its authority to seek an injunction against this "nuisance" not from federal law, but rather from sovereign power delegated to it by the Commonwealth of Pennsylvania for the purpose of permitting it to protect the health and welfare of its citizens.

The Supreme Court never has indicated either that it is improper for states or municipalities to proscribe obscenity and prosecute those who sell and distribute obscene material, or that a state trial court or jury is unable to interpret and apply the appropriate constitutional standards. Significantly, the defendants have failed to cite any case removed solely on the basis that the defendants to the action planned to raise First Amendment defenses. Indeed, the only cited case which involves a factual situation similar to that involved here unequivocally holds that a plaintiff's anticipation of such defenses " * * * would not mean that the cause of action alleged by plaintiff is founded on a claim or right arising under the Constitution * * *", Levitt and Sons, Inc. v. Prince George County Cong. of Racial Eq., 221 F.Supp. 541, 544 (D.Md.,

1963). The plaintiff in *Levitt* had requested an injunction in the state court against the defendants' picketing of their housing project and, despite the certainty that the defendants would raise First Amendment defenses, the Court denied the petition to remove under both § 1441 and § 1443.

Furthermore, the defendants have failed to draw any distinction between this case and thousands of other cases, properly instituted and prosecuted in the state courts, where defendants intend to rely primarily upon federal constitutional defenses. Sustaining removal in Civil Action No. 69–934 would create a precedent for sustaining removal of all state cases where defendants arrested and charged with lesser misdemeanors planned to rely on Federal Constitutional defenses. State courts, of course, have the same obligation as federal courts to vindicate meritorious federal constitutional claims and, assuming that an allegation that they will not do so is relevant in support of any request for federal judicial intervention, cf. *Dombrowski*, supra, it is not relevant for purposes of removing an action here pursuant to Title 28 U.S.C. § 1441.

Finally, although the substantive legal standard to be applied in determining the obscenity of any work is "national", see, e.g. Manual Enterprises, Inc. v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), and Jacobellis v. Ohio, 378 U.S. 184, 194–195, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), this requirement does not mean that only federal courts can apply the standard or, alternatively, that state judges and juries cannot. (The reference to a "national" standard also does not mean that the question of obscenity is a matter of federal common law). Nor, as noted supra, p. 290, is there any precedent for considering an initial determination of the obscenity of a work by a federal court of limited jurisdiction res judicata as to a subsequent proceeding instituted by a different sovereign beyond the jurisdiction of that lower federal court.

Accordingly, the City's motion to remand Civil Action No. 69–934 should be granted. Since the court has concluded in the federal diversity companion case that Grove Press is entitled to an injunction against the continuation of these removed proceedings, so long as that injunction remains in effect nothing further can be done in the removed case. U.S. Const. Art. VI. The City cannot proceed in the face of the injunction and the motion to remand is moot. If the injunction were to be dissolved here as a result of further proceedings in the Grove case, however, it is clear that the motion to remand should be granted. Accordingly, the Court will enter an order granting the motion to remand conditionally upon the dissolution of the injunction heretofore entered in the Grove case.

### ORDER

And now, this 20th day of May, 1969, it is hereby ordered that in Civil Action No. 69–972, the motion to dismiss by the City of Philadelphia is denied.

It is further ordered that upon the entry of security for costs and damage in the amount of $5,000.00, the plaintiff's motion for a preliminary injunction is granted, and the City of Philadelphia, its officers and agents, are hereby enjoined from engaging in, or further prosecuting, any proceeding attempting to prevent the exhibition of the plaintiff's film in the City of Philadelphia on the ground that it is a public nuisance.

It is further ordered that the motion of the plaintiff, Grove Press, Inc., for a declaratory judgment is denied.

In Civil Action No. 69–934, it is ordered that the plaintiff's motion to remand is granted conditionally; the condition being that if the injunction granted in Civil Action No. 69-972 is dissolved, Civil Action No. 69–934 shall forthwith be remanded to the state court.

Finally, it is ordered that this Court's Order in Civil Action No. 69–934 involves controlling questions of law as to

**294**

which there is substantial ground for differences of opinion and that an immediate appeal from this order, as authorized by Title 28 U.S.C. § 1292 may materially advance the ultimate termination of this litigation.