ENTERTAINMENT VENTURES, INC., a California corporation; 80 Drive-In, Inc., an Alabama corporation; Mini-Cinema of Alabama, Inc., an Alabama corporation; and Jefferson Drive-Ins, Inc., an Alabama corporation; T. W. Tidmore; Frank L. Thompson, Jr.; and L. J. Pepper, Plaintiffs,

v.

Honorable Albert P. BREWER, Governor of the State of Alabama; Honorable Floyd H. Mann, Director of the Department of Public Safety of the State of Alabama; Captain Willie B. Painter, Department of Public Safety of the State of Alabama; Captain E. J. Dixon, Department of Public Safety of the State of Alabama; Lt. R. H. Holmes, Department of Public Safety of the State of Alabama; City of Birmingham, a municipal corporation; Honorable

Jamie Moore, Police Chief of the City of Birmingham, Alabama, and their successors in office, Defendants.

Cecil QUARLES, Individually and doing business as Etowah Art Cinema, Intervening Plaintiff,

v.

Honorable Albert P. BREWER, Governor of the State of Alabama; Honorable Floyd H. Mann, Director of the Department of Public Safety of the State of Alabama; Captain James A. Davis, Sergeant Roy McDowell, the City of Attalla, Alabama, and Police Chief Claude Carr, Defendants.

JET DRIVE-IN THEATRE, INC., a corporation, and William Ashley Metcalfe, Plaintiffs,

v.

Albert P. BREWER, Governor of the State of Alabama; Floyd Mann, Director, Department of Public Safety, State of Alabama; Herman Pitts, State Trooper, State of Alabama; David W. Crosland, District Attorney, State of Alabama; and Benjamin P. Franklin, Defendants.

BLACK WARRIOR AMUSEMENT CORPORATION, an Alabama corporation; Jack Vaughn Productions, Inc., a Georgia corporation; and Johnny Moses, Plaintiffs,

v.

Floyd MANN, Willie Painter and R. W. Moore, Defendants.

Civ.A.Nos. 2898–N, 2900–N, and 2901–N.

United States District Court
M. D. Alabama, N. D.

Sept. 30, 1969.

Order Dec. 18, 1969.

Douglas P. Corretti, N. Daniel Rogers and Jimmy S. Calton, Corretti, Newsom, Rogers & May, Birmingham, Ala., for plaintiffs Entertainment Ventures, Inc., and others.

J. Richard Carr, Burns, Carr & Shumaker, Gadsden, Ala., for intervening plaintiff.

J. Paul Lowery, Montgomery, Ala., for plaintiffs Jet Drive-In Theatre, Inc., and another.

Sam R. Shannon, Jr., and James H. Crow, III, Beavers, Shannon, Harrison & Odom, Birmingham, Ala., and F. E. Leonard, Jr., Montgomery Ala., for plaintiffs, Black Warrior Amusement Corp. and others.

MacDonald Gallion, Atty. Gen., State of Alabama, and James J. Carter, William Inge Hill and Robert C. Black, Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., for defendants.

J. M. Breckenridge, Earl McBee and Herbert Jenkins, Birmingham, Ala., for defendants City of Birmingham and Police Chief Moore.

E. K. Hanby, Jr., Gadsden, Ala., for defendants City of Attalla and Police Chief Carr.

OPINION AND ORDER

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

RIVES, Circuit Judge:

I.

These cases were submitted for decision on the motions for preliminary injunction. Evidence was taken orally before the Court for about a day and a half and additional evidence has been supplied by affidavits. Upon the oral hearing the Court announced that for the purpose of this submission it was satisfied that the prosecutions of the plaintiffs by the defendants were not in bad faith within the meaning of that term as used in Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, and the Court now so finds. The Court stated also that, to decide the issues developed under the present state of the law and facts, there is no necessity for it to view the motion picture films or to make any finding as to the obscenity vel non of any of the films. We adhere to that position. The Court's decision on the motions for preliminary injunction turns on the issues of (1) whether the seizures of the films were constitutional and (2) whether the state prosecutions are based upon any applicable and constitutional statute or ordinance. In view of the public importance of those questions, we have called for briefs and have taken time for a detailed study of the law.

II.

The facts in these cases are almost identical. On the night of July 9, 1969, Alabama state police officers, acting pursuant to instructions from defendants Governor Albert Brewer and Floyd

Mann, Director of the Department of Public Safety for the State of Alabama, conducted "raids" on six movie theaters located throughout Alabama. Defendants Brewer and Mann had instructed each of the several state officers to purchase tickets at the various theaters, to view the entire film, and to determine in the officer's own opinion whether or not the movie was obscene. If the movie was determined to be obscene, the film was to be seized and the operator arrested. Acting on these instructions, the officer at each theater viewed the movie and concluded that it was obscene. Thereafter, during the raids, the person in charge of operating each theater at the time of the raid was arrested and the film was seized as evidence.

The chart below lists the movies that were seized by the defendant officers. All owners of theaters, owners of films and parties arrested listed are plaintiffs in these three cases. The officers who seized the films, together with Governor Brewer and Alabama Safety Director Mann, are defendants.

| Case No. | Theater & Location | Film Seized | Owner of Theater | Owner of Film | Party Arrested | Officer Seizing Film[1] |
|---|---|---|---|---|---|---|
| 2898–N | 80 Drive-In Theater, Selma, Ala. | "The Starlet" | 80 Drive-In, Inc. | Entertainment Ventures, Inc. | L. J. Pepper | Capt. Willie B. Painter |
| | Festival Cinema Theater, Birmingham, Ala. | "The Starlet" | Mini-Cinema of Alabama, Inc. | same | T. W. Tidmore | Lt. R. H. Holmes |
| | Auto Movies No. 1, Jefferson County, Ala. | "Thar She Blows" | Jefferson Drive-In, Inc. | same | Frank L. Thompson, Jr. | Capt. E. J. Dixon |
| | Etowah Art Cinema, Attalla, Ala. | "Babette" | Cecil Quarles | ——— | Cecil Quarles | Capt. James A. Davis Sgt. Roy McDowell |
| 2900–N | Jet Drive-In Theater, Montgomery, Ala. | "Inga" | Jet Drive-In Theater, Inc. | ——— | William Ashley Metcalfe | Herman Pitts |
| 2901–N | Tide II Theater, Tuscaloosa, Ala. | "The Secret Sex Lives of Romeo and Juliet" | Black Warrior Amusement Corp. | Jack Vaughn Production, Inc. | Johnny Moses | Capt. R. W. Moore |

By stipulation of all parties, the arrests and seizures of film were made without arrest or search warrants and without a prior adversary hearing as to the obscenity of the films. All six films were introduced as evidence and are now in the possession of this Court.

In all three cases the plaintiff theater managers were charged with violating Section 374, Title 14, Code of Alabama of

1. In case 2898–N, the City of Birmingham and Jamie Moore, Police Chief of Birmingham, are also defendants. In case 2898–N, as to the plaintiff-intervenor Cecil Quarles, the City of Attalla and Claude Carr, Chief of Police of Attalla, Alabama, are also defendants. In case 2900–N, David Crosland, District Attorney of the Montgomery County Circuit Court, and Benjamin Franklin, Probation Officer for the Montgomery County Circuit Court, are also defendants.

1940,[2] when arrested. Subsequent to his arrest, each theater manager was also charged with violating Section 374(4), Title 14, Code of Alabama Recompiled 1958, pocket part [Act No. 856, Acts of Alabama, 1961].[3]

In case 2898–N, plaintiff theater-manager Tidmore was also charged by the City of Birmingham with violating Ordinances 36–56[4] and 67–2,[5] General City Code, City of Birmingham.

In cases 2901–N and 2898–N, criminal prosecutions are currently pending in the state courts. Prosecutions of the following plaintiffs have been set for trial but not actually tried pending the conclusion of this case: Johnny Moses, Recorder's Court of City of Tuscaloosa; Frank L. Thompson, Jr., Bessemer County Court; T. W. Tidmore, Recorder's Court, City of Birmingham;[6] L. J. Pepper, Dallas County Court. It is difficult to ascertain

2. Section 374, enacted in 1909, reads:
 "*Nude pictures, display of prohibited.* —Any person, firm, or corporation who shall display nude pictures of a man, woman, or girl in any public place, except art galleries, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than fifty dollars not more than five hundred dollars."

3. Section 374(4), enacted in 1961, reads:
 "*Importation, sale or possession of obscene printed or written matter; penalties.*—(1) Every person who, with knowledge of its contents, sends or causes to be sent, or brings or causes to be brought, into this state for sale or commercial distribution, or in this state prepares, sells, exhibits or commercially distributes, or gives away or offers to give away, or has in his possession with intent to sell or commercially distribute, or to give away or offer to give away, any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter, shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year, and may be fined not more than two thousand dollars for each offense, or be both so imprisoned and fined in the discretion of the court.
 "(2) Every person who, with knowledge of its contents, has in his possession any obscene printed or written matter or material, other than mailable matter, or any mailable matter known by such person to have been judicially found to be obscene under this chapter shall be guilty of a misdemeanor and, upon conviction, shall be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months, or may

 be fined not more than five hundred dollars for each offense, or be both so imprisoned and fined in the discretion of the court."
 Section 374(3) defines obscene as: "[L]ewd, lascivious, filthy and pornographic and that to the average person, applying contemporary community standards, its dominant theme taken as a whole appeals to prurient interest."

4. "*State misdemeanors.* It shall be unlawful for any person to violate within the city or within the police jurisdiction thereof, any law of the state, now or hereafter enacted, the violation of which is a misdemeanor under state law."

5. Ordinance 67–2 reads, in part:
 "An Ordinance to make unlawful the possession, publishing, printing, manufacturing, sale, distribution, advertisement or exhibiting of obscene matter in the City of Birmingham or the police jurisdiction thereof and prescribe penalties therefor.
 \*　　\*　　\*　　\*　　\*
 "Section 2. It shall be unlawful for any person to knowingly send or cause to be sent or bring or cause to be brought into the City or the police jurisdiction thereof, for sale or distribution, any obscene matter.
 "Section 3. It shall be unlawful for any person to knowingly publish, print, exhibit, distribute or have in his possession with intent to distribute, exhibit, *sell or offer for sale*, in the City or the police jurisdiction thereof, any obscene matter."
 This ordinance defines obscene matter as: " 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest \*　\*　\*."

6. In Tidmore v. City of Birmingham, 307 F.Supp. 721 [Cr. No. 69–271, N.D.Ala., Aug. 11, 1969], the court denied a peti-

from the complaint, briefs and records whether a state criminal prosecution is currently pending against Quarles, plaintiff-intervenor.

In case 2900–N, plaintiff Metcalfe is charged with violating Section 374, Title 14 of the Alabama Code 1940, and Section 374(4), Title 14 of the Alabama Code Recompiled 1958 (pocket part) (see footnotes 2 and 3, *supra*). From the complaint, briefs and record, it appears that trial of this charge has not begun.

This case also involves an additional element. On June 27, 1969, Metcalfe was arrested on a warrant sworn to by defendant Franklin, Probation Officer of the Circuit Court of Montgomery County, for "contributing to the delinquency, dependency or neglect of" minors. At the time of his arrest, Metcalfe was exhibiting the movie "Space Thing" at the Jet Drive-In in Montgomery. Metcalfe was also arrested on July 9, 1969, for contributing to the delinquency of a minor.[7] At the time of this arrest, the movie "Inga" was being exhibited by Metcalfe at the Jet Drive-In. Trial in the state courts for these charges has not begun, but a trial date has been set pending the Court's order in this case.

### III.

■ We find that this Court has jurisdiction over the subject matter under various statutes, including 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983. We also find that this case is a proper one for a three-judge court under 28 U.S.C.A. §§ 2281, 2284.

### IV.

(1) Were the seizures of the films constitutional?

■■ The defendant police officers during the "raids" seized the motion picture films at all six theaters. The officers, acting under the orders of Governor Brewer and Floyd Mann, Director of the Department of Public Safety of Alabama, were to purchase tickets at the theater, view the films in question, make a determination as to whether or not the films were obscene, and, if they were, ar-

---

tion for removal of the State cases against Thompson and Tidmore to federal court and remanded the cases to the state courts.

7. Section 7(a) of Alabama Act 250 (Acts of Alabama 1959, Vol. 1, p. 810), as amended Alabama Act No. 100 (Acts of Alabama 1965, Vol. 1, p. 152), reads in part:

"Causing dependency, neglect or delinquency of children.—It shall be unlawful for any parent, guardian, or other person to aid, encourage, or cause any child under eighteen years of age to become or remain dependent, neglected or delinquent, or by words, acts, threats, commands or persuasions, induce or endeavor to induce, aid or encourage any child under eighteen years of age to do or perform any act or to follow any course of conduct which would cause or manifestly tend to cause such child to become or remain dependent, neglected, or delinquent, or by the neglect of any lawful duty or in other manner contribute to the dependency, neglect or delinquency of a child under eighteen years of age. * * * Whenever, in the course of any proceedings under this chapter, or when, by affidavit as hereinafter provided, it shall appear to the juvenile court that a parent, guardian, or other person having custody, control, or supervision of a child under eighteen years of age, or any other person not standing in any such relation to such child, has aided, encouraged, or caused such child to become dependent, neglected, or delinquent as defined herein, or has by word, act, or omission contributed thereto, or has, by threats, commands, or persuasion, induced or endeavored to induce, aided or encouraged, such child to do or perform any act or to follow any course of conduct which would cause or manifestly tend to cause such child to become or remain dependent, neglected or delinquent, the court shall, for the protection of such child from such influences, have jurisdiction in such matters, as provided herein. The court shall cause such parent, guardian, or other person to be brought before it upon either summons or a warrant, affidavit of probable cause having been first made, for such order or judgment in the premises as the court may see fit to make or render in accordance with the provisions of this section."

rest the manager and seize the films. The Supreme Court has held continuously since 1957 that obscenity is not within the area of constitutionally protected speech or press. Roth v. United States, 1957, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Jacobellis v. Ohio, 1964, 378 U.S. 184, 187, 84 S.Ct. 1676, 12 L.Ed. 2d 793; Stanley v. Georgia, 1969, 394 U.S. 557, 560, 89 S.Ct. 1243, 22 L.Ed.2d 542. Thus, a state possesses power to prevent distribution of obscene matter. Smith v. California, 1959, 361 U.S. 147, 155, 80 S.Ct. 215, 4 L.Ed.2d 205. However, under the fourteenth amendment, a state is not free to adopt whatever procedure it pleases without considering the possible consequences for constitutionally protected speech. Marcus v. Search Warrants, 1961, 367 U.S. 717, 731, 81 S.Ct. 1708, 6 L.Ed.2d 1127. As the Supreme Court stated in Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584, the "Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Such a procedure must be "designed to focus searchingly on the question of obscenity." Marcus v. Search Warrants, *supra*, 367 U.S. at 732, 81 S.Ct. at 1716.

▪ The seizures of the various films in these cases were admittedly made without a search warrant or pursuant to an arrest warrant.[8] In Lee Art Theatre, Inc. v. Virginia, 1968, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313, the Supreme Court reversed a Virginia conviction for possessing and exhibiting lewd and obscene motion pictures. The seizure of the film was made under the authority of a search warrant issued by a justice of the peace on the basis of an affidavit of a police officer who had determined from personal observation that the film was obscene. In holding this search violated the first and fourteenth amendments, the Court stated:

"The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' [quoting from *Marcus* at 367 U.S. 732, 81 S.Ct. 1708] and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." [9]

392 U.S. at 637, 88 S.Ct. at 2104. The seizure in *Lee Art Theatre* was under the authority of a warrant, while the seizures in these cases were not. The seizures at the several theaters, based solely on the conclusions of the Alabama police officials, fall short of the freedom of speech and expression guarantees of the first and fourteenth amendments, and, therefore, are unconstitutional.

▪ The defendants contend that the seizures were proper as incident to a lawful arrest—an offense committed in the presence of a police officer. *See* Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Such an argument would allow law enforcement officials to circumvent the Court's holding in *Lee Art Theatre, supra*. If a seizure, with or without a warrant cannot be based solely on the conclusory assertions of a police officer, a seizure should not be allowed as incident to an arrest for displaying an obscene motion picture—the commission of this offense being based solely on the conclusory assertion of the police officer.[10] *See* United States v.

---

8. Defendants' Answer in C.A. 2901–N, p. 7; Defendants' Answer in C.A. 2898–N, p. 9.

9. The Court did not reach the question of "whether the justice of the peace should have viewed the motion picture before issuing the warrant." 392 U.S. at 637, 88 S.Ct. at 2104.

10. Neither can the film be seized as contraband. "It is no answer to say that

Brown, S.D.N.Y.1967, 274 F.Supp. 561, 565.

The drafting of an appropriate interlocutory injunction makes it necessary for us to decide what procedure would meet constitutional requirements. In civil proceedings against the obscene material itself, the Supreme Court has spelled out what procedures must be followed. In Marcus v. Search Warrants, 1961, 367 U.S. 717, 81 S.Ct. 1708, the evil struck down was the broad discretion given to police officials to determine the character of the publications. The officials

"* * * were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity. * * * Procedures which sweep so broadly and with so little discrimination are obviously deficient in techniques required by the Due Process Clause of the Fourteenth Amendment to prevent erosion of the constitutional guarantees."

367 U.S. at 732–733, 81 S.Ct. at 1716. In A Quantity of Books v. Kansas, 1964, 378 U.S. 205, 84 S.Ct. 1723, the Court, in a question not reached in *Marcus*, held that an adversary hearing on the question of obscenity must first be conducted before allegedly obscene material can be constitutionally seized. Although *Quantity of Books* dealt with a noncriminal proceeding, numerous lower courts have held that an adversary hearing before seizure is necessary in a criminal proceeding. Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202; Central Agency, Inc. v. Brown, N.D.Ga.1969, 306 F.Supp. 502; Fontaine v. Dial, W.D.Tex.1969, 303 F.Supp. 436; Delta Book Dist., Inc. v. Cronvich, E.D. La.1969, 304 F.Supp. 662; Tyrone, Inc. v. Wilkinson, E.D.Va.1969, 294 F.Supp. 1330, aff'd, 410 F.2d 639, cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449; Cambist Film, Inc. v. Tribell, E.D. Ky.1968, 293 F.Supp. 407; Cambist Films, Inc. v. Illinois, N.D.Ill.1968, 292 F.Supp. 185; United States v. Brown, S.D.N.Y.1967, 274 F.Supp. 561.[11]

As will be observed, the decision of the Court of Appeals for the Seventh Circuit in Metzger v. Pearcy, *supra*,[12] holding that an adversary hearing is necessary prior to seizure, even in a criminal proceeding, was made before the Supreme Court's decision in *Lee Art Theatre, supra*. It seems significant that in the *Lee Art Theatre* case, the Supreme Court did not go that far. To the contrary, the Court's opinion and the two

obscene books are contraband, and that consequently the standards governing searches and seizures of allegedly obscene books should not differ from those applied with respect to narcotics, gambling paraphernalia and other contraband. We rejected that proposition in *Marcus*." A Quantity of Copies of Books v. Kansas, 1964, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 1726, 12 L.Ed.2d 809; see Marcus v. Search Warrants, 1961, 367 U.S. 717, 730–731, 81 S.Ct. 1708; Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202, 204.

11. In a recent case in Pennsylvania, Cambist Films, Inc. v. Duggan, W.D.Pa.1969, 298 F.Supp. 1148, the court held that seizures without a warrant were valid as incident to a valid arrest for a crime committed in the presence of the arresting officers. A valid arrest could be made without a warrant by an officer who viewed the entire film. *Cambist Films, Inc., supra* at 1152. The court in

addition held that seizures by officers who had not viewed the entire film were invalid. Under *Roth*, the entire film had to be viewed before a valid arrest could be made. It should be noted that the court did not discuss the necessity of an adversary hearing, and thus this issue was apparently not before the court. Such a procedure, it seems to us, is not " 'designed to focus searchingly on the question of obscenity' * * * and therefore [falls] short of constitutional requirements demanding necessary sensitivity to freedom of expression." *Lee Art Theatre, supra* 392 U.S. at 637, 88 S.Ct. at 2104.

12. Which the Fourth Circuit referred to as giving support to its views in the later case of Tyrone, Inc. v. Wilkinson, 1969, 410 F.2d 639, 641, certiorari denied 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449.

opinions cited by the Court leave open the development of a doctrine to the effect that if two conditions are met the film may be seized prior to an adversary hearing: (1) The judge himself must view the motion picture before issuing the warrant, or in some other manner must make a constitutionally sufficient inquiry into the factual basis for the officer's conclusions, and (2) existing state law must limit the holding of the film to a brief specified period within which the obscenity *vel non* of the film must be determined after an adversary hearing or the film must be returned to the exhibitor.

"The admission of the films in evidence requires reversal of petitioner's conviction. A seizure of allegedly obscene books on the authority of a warrant 'issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered * * * obscene,' was held to be an unconstitutional seizure in Marcus v. Search Warrant, 367 U.S. 717, 731–732 [81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127]. It is true that a judge may read a copy of a book in courtroom or chambers but not as easily arrange to see a motion picture there. However, we need not decide in this case, whether the justice of the peace should have viewed the motion picture before issuing the warrant. The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' *id.*, at 732 [81 S.Ct. at 1716], and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. See Freedman v. Maryland, 380 U.S. 51, 58–59 [85 S.Ct. 734, 738–739, 13 L.Ed.2d 649]."

*Lee Art Theatre, supra* 392 U.S. at 637, 88 S.Ct. at 2104.

We find especially significant the pertinent parts of the two cases which the Supreme Court cited, *viz:* Marcus v. Search Warrants, *supra,* 367 U.S. at 731–732, 81 S.Ct. 1708, and Freedman v. Maryland, 380 U.S. 51, 58–59, 85 S.Ct. 734. In the *Marcus* case, the Court had said:

"Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene."

367 U.S. at 731–732, 81 S.Ct. at 1716.

In the *Freedman* case, *supra,* the Court had said:

"The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See Bantam Books, Inc. v. Sullivan, *supra* [372 U.S. 58, 83 S.Ct. 631]; A Quantity [of Copies] of Books v. [State of] Kansas, 378 U.S. 205 [84 S.Ct. 1723, 12 L.Ed.2d 809]; Marcus v. Search Warrant, *supra* [367 U.S. 717, 81 S.Ct. 1708]; Manual Enterprises, Inc. v. Day, 370 U.S. 478, 518–519 [82 S.Ct. 1432, 1453–1454, 8 L.Ed.2d 639]. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an adminis-

trative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See Bantam Books, Inc. v. Sullivan, *supra*. Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

380 U.S. at 58–59, 85 S.Ct. at 739.

The procedural safeguards thus described were found by the Court sufficient to obviate the dangers of a *noncriminal* process requiring submission of a motion picture film to a censor *prior* to its exhibition. It would seem that like procedural safeguards should suffice to obviate the danger of seizure without a prior adversary hearing on the authority of a warrant issued upon probable cause found upon constitutionally adequate inquiry by the issuing judge.[13] The distinction seems important to the practical enforcement of a state criminal statute barring the exhibition of an obscene motion picture film, because if initial seizure is delayed until after an adversary hearing, an opportunity is afforded for the film to be cut, spliced, added to, or otherwise edited or altered.

▓▓▓ Undertaking to follow the teaching of Lee Art Theatre as we understand that decision, we hold that: (1) A motion picture film in use for exhibition to present and/or future audiences cannot be seized as evidence of a criminal offense on the authority of a warrant issued on the strength of conclusory assertions of a police officer or officers; (2) such a film can, however, be constitutionally seized without a prior adversary hearing on the authority of a warrant issued upon probable cause established either by the issuing judge himself viewing the motion picture before issuing the warrant, or by his making some other constitutionally sufficient inquiry into the factual basis for the officer's conclusions, provided that statutory law or judicial construction [14] limits the holding of the film to a brief specified time presently described; (3) if a film has been thus constitutionally seized without a prior adversary hearing, it can be held only for a specified brief period fixed by statute or authoritative judicial construction compatible with sound judicial resolution within which its obscenity *vel non* must be judicially determined after an adversary hearing or the film must be returned to the exhibitor.[15]

(2) Is the 1909 Alabama statute constitutional?

Plaintiffs are charged with violating Code of Alabama 1940, § 374, which reads:

"*Nude pictures, display of prohibited.*—Any person, firm, or corporation who shall display nude pictures of a man, woman, or girl in any public

13. The Fourth Circuit did not discuss or decide this question in Tyrone, Inc. v. Wilkinson, *supra*, and probably was not called on to do so because that case involved a past conviction, while this case involves an injunction governing future conduct. That case is presently pending on certiorari, 38 L.W. 3057.

14. Alabama presently has no such statute. Under the circumstances of this case, we have no alternative but to order the return of the film to the exhibitors (see footnote 27, *infra*).

15. While it is not for this Court to determine what procedures the State of Alabama might adopt in effectuating its public policy against the distribution or exhibition of obscene motion picture film,

it is not improper to suggest other possible procedures which might be effectively utilized. One procedure would be a temporary restraining order—enjoining the exhibitor of a film from removing the film from the court's jurisdiction and from altering in any manner the content of the film—followed by an adversary hearing on the question of obscenity. Another procedure would be a noncriminal process requiring the prior submission of a film to a censor under procedural safeguards designed to obviate the dangers of a censorship system. *See* Freedman v. Maryland, 1965, 380 U.S. 51, 85 S.Ct. 734; Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469.

place, except art galleries, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than fifty dollars not more than five hundred dollars."

 This statute does not meet the constitutional requirements of the first and fourteenth amendments guaranteeing freedom of expression. As the Supreme Court said in *Roth*,

> "Ceaseless vigilance is the watchword to prevent * * * erosion [of First Amendment rights] by Congress or by the States. The door barring federal and state intrusion into this area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests."

354 U.S. at 488, 77 S.Ct. at 1311. The statute was enacted in 1909, long before the decision in *Roth*. It is not limited to the displaying of obscene pictures in public. Thus, the statute is unconstitutional on its face in that it punishes criminally expression protected by the first and fourteenth amendments. *See* Aptheker v. Secretary of State, 1964, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992; NAACP v. Button, 1963, 371 U.S. 415 438, 83 S.Ct. 328, 9 L.Ed.2d 405; Marcus v. Search Warrant, 1961, 367 U.S. 717, 733, 81 S.Ct. 1708. As recently reiterated by the Supreme Court in NAACP v. Alabama ex rel. Flowers, 1964, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325:

> "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."

It should be pointed out that section 374 of the 1940 Alabama Code is very close in wording to the Louisiana statute [16] declared unconstitutional on its

face in Delta Book Dist., Inc. v. Cronvich, *supra*. In *Delta Book* the court commented:

> "Subsection (7) of paragraph A is unconstitutional on its face as plaintiffs contend. A simple reading of this subsection reveals that by its terms it is overbroad. A literal application thereof would, for example, make it a criminal offense to display, for any purpose, universally accepted anatomical works or recognized works of art or the like * * *. Such a limitation is patently unconstitutional."

304 F.Supp. 667.

(3) Is the 1961 Alabama statute codified as Section 374(1)–(16), Title 14, Code of Alabama, or the Birmingham ordinance unconstitutional on its face because in defining obscene it does not include the element "utterly without redeeming social value"?

In Roth v. United States, *supra*, the Supreme Court defined obscenity as "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489, 77 S.Ct. at 1311. In Jacobellis v. Ohio, 1964, 378 U.S. 184, 191, 84 S.Ct. 1676, 12 L.Ed.2d 793, the Court, although recognizing that its *Roth* standard was not perfect, adhered to that standard. However, "obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance * * *.'" The constitutional status of material may not be made "to turn on a 'weighing' of its social importance against its prurient appeal, for a work cannot be proscribed unless it is 'utterly' without social importance." *Id.*

Thus, the Court apparently was adding a third element to its obscenity standard delineated in *Roth*. In Memoirs v. Massachusetts, 1966, 383 U.S. 413,

---

16. Section 7 of Louisiana R.S. 14:106, subd. A(7) reads as follows:
"(A) Obscenity is the intentional:
* * *

"(7) Display of nude pictures of a man, woman, boy or girl in any public place, except as works of art exhibited in art galleries."

418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, the Court found that under its *Roth* definition, as elaborated in subsequent cases,

"* * * three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The Court in elaborating on the third element stated:

"A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness."

383 U.S. at 419, 86 S.Ct. at 978. It is evident from its later cases that a majority of the Supreme Court would find that a definition of obscenity must include the third element of "utterly without redeeming social value." *See* Redrup v. New York, 1967, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 18 L.Ed.2d 515; Ginsberg v. New York, 1968, 390 U.S. 629, 635, 643, 88 S.Ct. 1274, 20 L.Ed.2d 195. Lower courts have also found the definition of obscenity to include the element of "utterly without redeeming social value." *E. g.,* United States v. A Motion Picture Film, 2 Cir. 1968, 404 F.2d 196; United States v. Film "491", 2 Cir. 1966, 367 F.2d 889; United States v. Klaw, 2 Cir. 1965, 350 F.2d 155; Stein v. Batchelor, N.D.Tex.1969, 300 F.Supp. 602; United States v. 392 Copies of Magazine Entitled "Exclusive," D.Md.1966, 253 F.Supp. 485.

Assuming that the definition of obscenity includes the three elements set forth in *Memoirs,* the question presented is whether or not a state statute prohibiting the exhibition of obscene material must define obscenity as including *Memoirs'* three elements. The courts that have considered this question are divided. In Cambist Films, Inc. v. Tribell, 293 F.Supp. 407, a three-judge court found that the Kentucky statute before the court was not unconstitutional on its face, even though the statute did not explicitly contain the "utterly without redeeming social value" element in defining obscenity. The court thought that *Memoirs* did not change the basic definition of obscenity found in *Roth.* In listing the three elements, the Court in *Memoirs* was not making additional requirements but merely explaining the *Roth* test. *Id.* at 410. The court in finding the Kentucky statute constitutional on its face found that (1) although the Kentucky courts had not construed the statute, it was inconceivable that the Kentucky courts would not construe the state statute as including the "utterly without redeeming social value" element, and (2) the statute, in any event, could be "construed as supplying the requirement of absence of redeeming social value." *Id.* In a more recent three-judge case, Delta Book Dist., Inc. v. Cronvich, E.D.La.1969, 304 F.Supp. 662, the court concurred with the court in Cambist Films, Inc. v. Tribell, *supra,* that in *Memoirs* the Supreme Court was "not making additional requirements, but was merely explaining the *Roth* test." Delta Book Dist., Inc. v. Cronvich, *supra* at 668. The court then found that the Louisiana statute, while not explicitly inclusive of the tripartite test enunciated in *Memoirs,* did satisfy constitutional requirements if judicially interpreted and applied in light of *Memoirs.*

In addition to Cambist Films, Inc. v. Tribell, *supra,* and Delta Book Dist., Inc. v. Cronvich, *supra,* another three-judge court has held that the elements in the definition of obscenity, as formu-

lated in later cases elaborating on *Roth,* do not have to be included specifically in the language of a state statute defining obscenity. In Great Speckled Bird v. Stynchcombe, N.D.Ga. 1969, 298 F.Supp. 1291, the court held that these elements are "grafted to the Georgia law by virtue of the supremacy of the Constitution of the United States and the binding effect of decisions of the Supreme Court of the United States in interpreting that Constitution." 298 F.Supp. at 1292. Thus, there are three-judge cases from Louisiana, Georgia and Kentucky holding that the elements of obscenity, as specified in Supreme Court cases subsequent to *Roth,* need not be specifically included in a state statute (all three courts relying on slightly different reasons).

In Stein v. Batchelor, *supra,* a three-judge court found a Texas obscenity statute unconstitutional on its face since the statute did not contain the "utterly without redeeming social value" element of *Memoirs.* Since the Texas statute had not been construed by the state courts, the court itself construed the statute. The court then stated:

> "It is clear to us that the Supreme Court in *Memoirs* has added to the definition per se, of 'obscene' in the *Roth* case by including in it the provision that to be 'obscene' material must be 'utterly without redeeming social value.' Thus without such inclusion the Texas statute is unconstitutional."

300 F.Supp. at 608.

The *Stein* court in finding the Texas statute unconstitutional on its face placed great weight on a statement made by the Fifth Circuit in construing the same Texas obscenity statute. In Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232, 240, the Fifth Circuit, although not passing directly on the question, stated:

> "Since the Texas statute is devoid of any language that requires a finding that the material must have no redeeming social value, it may be constitutionally suspect."

It should also be pointed out that the Supreme Court has not directly confronted this question—whether or not a statute defining obscenity must contain the redeeming social value element. However, in dissenting from a denial of a petition for certiorari in Fort v. City of Miami, 1967, 389 U.S. 918, 88 S.Ct. 231, 19 L.Ed.2d 263, Justices Stewart, Black and Douglas expressed the view that the ordinance under which the petitioner had been convicted was unconstitutional on its face. The wording of the test of obscenity embodied in the Florida statute in question was similar to the Alabama statute in this case in that the "utterly without redeeming social value" element was omitted from the test. In *Fort,* Justice Stewart pointed out that the

> " 'prurient interest' language of the Florida statute may be traced to a sentence in this Court's opinion in Roth v. United States, 354 U.S. 476, 489 [77 S.Ct. 1304, 1 L.Ed.2d 1498]. That language, however, cannot be taken to establish a constitutionally sufficient 'test' of obscenity. The prevailing opinion by Mr. Justice Brennan in [A Book Named 'John Cleland's] Memoirs [of a Woman of Pleasure'] v. [Attorney General of Com. of] Massachusetts, 383 U.S. 413 [86 S.Ct. 975, 16 L.Ed.2d 1], recognized that a State may not suppress matter as 'obscene' unless ' * * * (c) the material is utterly without redeeming social value * * *.' "

389 U.S. at 919, 88 S.Ct. at 232, n. 4.

The Supreme Court of Alabama has held that in order to avoid nullifying a statute, the court will adopt any reasonable construction of which it is susceptible. Standard Oil Co. v. State, Ala. 1912, 178 Ala. 400, 59 So. 667. Similarly, the Supreme Court of the United States has declared:

> "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it

would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same. [Citations omitted.] "

National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893. Followed in United States v. Menasche, 1955, 348 U.S. 528, 538, 75 S.Ct. 513, 99 L.Ed.2d 615.

 That principle seems to us controlling. We therefore disagree with the Texas three-judge case, and agree with the three-judge cases from Kentucky, Louisiana and Georgia. We construe the 1961 Alabama statute and the Birming-

ham ordinance as including the "utterly without redeeming social value" element.[17] It follows that neither the 1961 Alabama statute nor the Birmingham ordinance [18] is unconstitutional on its face for failure to include that element.[19]

(4) Is the 1961 Alabama statute clearly inapplicable to the exhibition of motion pictures?

The "matter" to which the Birmingham ordinance applies is defined so as expressly to include a "motion picture." [20] That is not true of the 1961 Alabama statute.[21] That statute was first enacted on September 8, 1961. General Acts of Alabama 1961, p. 1310. The title of that Act reads as follows: "To suppress

---

17. That is in line also with another well-settled rule that criminal statutes must be given a strict interpretation in favor of defendants. Fuller v. State, 1952, 257 Ala. 502, 60 So.2d 202. *Accord:* Williams v. United States, 1951, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774; Smith v. United States, 1959, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041; United States v. Braverman, 1963, 373 U.S. 405, 83 S.Ct. 1370, 10 L.Ed.2d 444.

18. We can consider plaintiffs' challenge as to the constitutionality of the Birmingham ordinance since this Court is properly convened under 28 U.S.C.A. § 2281 (to determine the constitutionality of a state statute and whether or not state officials should be enjoined from prosecuting plaintiffs under this statute). If there is a clear case for convening a three-judge court, the court can consider other questions properly before it whether or not these questions would have justified the calling of a three-judge court. Johns v. Allen, D.Del.1964, 231 F.Supp. 852; *see* United States v. Georgia Public Serv. Comm'n, 1963, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317.

19. An additional attack made by plaintiffs against Birmingham ordinance 67–2 is that its definition of obscenity reads "to the average person, applying contemporary standards" instead of "contemporary *community* standards" (as required by the *Roth* definition of obscenity). This omission (apparently a clerical error) does not affect the constitutionality of the ordinance for the reasons set forth above concerning omission of the element "utterly without redeeming social value."

In Manual Enterprises, Inc. v. Day, 1962, 370 U.S. 478, 486, 82 S.Ct. 1432, 8 L.Ed.2d 639, the Supreme Court held that, in addition to the "prurient interest" element, a federal statute must require proof of the element "patent offensiveness." The Fifth Circuit, however, has interpreted *Manual* as not intending to add to the *Roth* definition a separate element of "patent offensiveness." In Chemline, Inc. v. City of Grand Prairie, 5 Cir. 1966, 364 F.2d 721, the court held that "if a work appeals to the prurient interest of the average American judged by contemporary national standards, then it is *ipso facto* 'patently offensive.'" *Id.* at 727.

20. Section 1 B of the ordinance reads:
"'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription, or mechanical, chemical or electrical reproduction, or any other articles, equipment, machines, or materials."

21. The last paragraph of Title 14, Section 374(3) of the Alabama Code reads as follows:
"'Printed or written matter or material' means any book, pamphlet, magazine, periodical, newspaper, picture magazine, comic book, story book, or other printed or written matter, but does not include written or printed matter or material used by or in any religious, scientific or educational institution."

traffic in obscene publications, defining terms, prescribing penalties, and providing enforcement procedures against residents or non-residents."

 The Constitution of Alabama, Section 45 requires the subject of each law to "be clearly expressed in its title." In Alabama both the title and the preamble of an Act may be looked to in order to ascertain the intent and remove uncertainty.[22] Indeed, the rule has been stated that:

"In case of doubt or inconsistency between language in the enacting part of a statute and language in the preamble, the preamble controls because it expresses in the most satisfactory manner the reason and purpose of the act. Sutherland Statutes and Statutory Construction, Vol. 2, p. 342, § 4801 (3)."

Ball v. Jones, 1961, 272 Ala. 305, 132 So.2d 120, 129.

The reason and purpose of the 1961 Alabama statute seem to be most clearly expressed in Section 2 of the Act, now Title 14, Section 374(2) of the Alabama Code.

"*Purpose of chapter.*—The spread of obscene publications, during the past several years, has become a matter of increasingly grave concern to the people of this state. The elimination of this evil and the consequent protection of the citizens and residents of this state against such publications are in the best interest of the morals and general welfare of the people. The accomplishment of these ends can best be achieved by providing public prosecutors both with the speedy civil remedy for obtaining a judicial determination of the character and contents of publications and with an effective power to reach nonresidents responsible for the composition,

publication and distribution of obscene publications within this state."

The defendants argue that a motion picture is a "print" within the meaning of the Alabama statute.[23]

 Usually construction of a state statute is an exercise for the state courts and not the federal courts under the doctrines of abstention and comity. However, where a state statute proscribing nonprotected speech and expression is clearly inapplicable to a particular method of expression, state prosecution under the statute would be equivalent to "invoking the statute in bad faith * * *" *Dombrowski,* supra 380 U.S. at 490, 85 S.Ct. at 1123. Bad faith prosecution usually is found by focusing on state officials' conduct in imposing continuing harassment in order to discourage certain activities. *See Dombrowski, supra;* Machesky v. Bizzell, 5 Cir. 1969, 414 F.2d 283; Sheridan v. Garrison, 5 Cir. 1969, 415 F.2d 699. We have held the defendants not guilty of that type of bad faith prosecution. However, conduct legally equivalent to bad faith prosecution occurs where state officials in attempting to proscribe activities so closely related to first amendment rights bring criminal prosecutions under a clearly inapplicable state statute. To allow such prosecution, regardless of outcome, would chill first amendment rights. As stated by the Supreme Court in *Dombrowski:*

"By permitting determination of the invalidity of [state] statutes without regard to the permissibility of some regulation on the facts of particular cases, we have, in effect, avoided making vindication of freedom of expression await the outcome of protracted litigation. Moreover, we have not thought that the improbability of successful prosecution makes the case different. The chilling effect upon the

22. State ex rel. City of Mobile v. Board of Revenue and Road Comr's, 1918, 202 Ala. 303, 80 So. 368, 369, 370; Newton v. City of Tuscaloosa, 1948, 251 Ala. 209, 36 So.2d 487, 494.

23. Defendants cite United States v. Peller, 2 Cir. 1948, 170 F.2d 1006, for the proposition that a motion picture film is printed matter within the meaning of section 374(3).

exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."

380 U.S. at 487, 85 S.Ct. at 1121. We are not convinced that the 1961 Alabama statute is so clearly inapplicable to the exhibition of motion pictures that prosecution under that statute would amount to invoking the statute in bad faith.

(5) Can the "contributing to the delinquency of a minor" statute be constitutionally applied to the exhibition of a motion picture film?

Plaintiff Metcalfe is charged with violating a state statute with local application to the City of Montgomery. Alabama Act No. 250 (Acts of Alabama 1959, Vol. 1, p. 810), as amended Alabama Act No. 100 (Acts of Alabama 1965, Vol. 1, p. 152), punishes as a misdemeanor contributing to the delinquency of a minor.[24] Plaintiff challenges the constitutionality of this statute on two grounds: (1) that it violates the equal protection clause of the fourteenth amendment in that it provides a different punishment for individuals charged with contributing to the delinquency of a minor under Act 250 than charged with the same offense under the general state statute,[25] and (2) that it violates the Alabama Constitution which prohibits the State Legislature from passing a local law fixing the punishment of a crime.

We pretermit consideration of either of these contentions, because, on first amendment grounds, for reasons of vagueness, this statute cannot be constitutionally applied to the exhibition of a motion picture film. A criminal statute affecting expression protected by the first amendment must meet the stringent requirements of specificity. "The statute will be held void for vagueness unless it defines the area of illegal conduct with sufficient specificity so that 'men of common intelligence [need not] guess at its meaning * * *.'" Hiett v. United States, 5 Cir. 1969, 415 F.2d 664, quoting Connally v. General Constr. Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed 322. The requirement of specificity is especially crucial in the first amendment area. See Ashton v. Kentucky, 1966, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed. 2d 469; Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098. The Supreme Court in Smith v. California, 1959, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, emphasized the problem of statutory vagueness in the first amendment area:

"[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser."

24. Act 250 (as amended) establishes a family relations division of the circuit court in all counties in Alabama having a population between 125,000 and 225,000. Section 1 of this Act states that these courts shall have jurisdiction over juveniles for purposes of enforcing Chapter 7 of Title 13 of the 1940 Code of Alabama. Section 350(3) of Title 13 of the Alabama Code defines delinquent child as:

"* * * any child who while under sixteen years of age violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town or municipality, or who commits any offense or act for which an adult could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his parent, parents, guardian, or custodian, or who is otherwise incorrigible, or who is guilty of immoral conduct; or who is leading an idle, dissolute, lewd or immoral life; or who engages in any calling, occupation or exhibition punishable by law or is found in any place for permitting which an adult may be punished by law."

25. Plaintiff bases his claim on the grounds that Act 250 defines juvenile as any boy or girl under the age of 18, while the general statute has an age limit of 16.

The Court reiterated its concern in Ashton v. Kentucky, *supra:*

> "Here, * * * we deal with First Amendment rights. Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer. We said in Cantwell v. Connecticut, *supra* [310 U.S. at 307, 60 S.Ct. 900, 84 L.Ed. 1213], that such a law must be 'narrowly drawn to prevent the supposed evil * * *.' [Footnotes omitted.]"

384 U.S. at 200–201, 86 S.Ct. at 1410. See also Hiett v. United States, *supra,* 415 F.2d at 671 (distinction drawn between vagueness in first amendment area and vagueness for reasons of due process).

The statute in question makes unlawful for any person "to aid, encourage, or cause any child * * * to become or remain delinquent, or by words [or] acts * * * induce or endeavor to induce, aid or encourage any child * * * to do or perform any act or to follow any course of conduct which would cause * * * such child to become or remain dependent, neglected, or delinquent * * * or to encourage * * * such child to do or perform any act or to follow any course of conduct which would cause or manifestly tend to cause such child to become or remain dependent, neglected or delinquent * * *." A delinquent child is defined, in part, as: "[A]ny child * * * who is beyond control of his parents * * *, or who is otherwise incorrigible, or who is guilty of immoral conduct; or who is leading an idle, dissolute, lewd or immoral life * * *." Such a criminal statute is too vague and imprecise to punish an individual who is exhibiting a motion picture film. In the area of first amendment rights, we start with the "premise that '[p]recision of regulation must be the touchstone' * * *." Interstate Circuit, Inc. v. City of Dallas, 1968, 390 U.S.

676, 682, 88 S.Ct. 1298, 1302, 20 L.Ed. 2d 225, quoting NAACP v. Button, 1963, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed. 2d 405. Phrases, such as "to cause any child to become delinquent," "to induce, aid or encourage any child," "otherwise incorrigible," "guilty of immoral conduct," "leading an idle, dissolute, lewd or immoral life," cannot meet the strict standard of specificity required in a criminal statute affecting expression protected by the first amendment. *See* Ashton v. Kentucky, *supra;* Dombrowski v. Pfister, *supra;* Smith v. California, *supra.* It is not inconceivable that the State under this statute might attempt to punish exhibition of films depicting violence or of films teaching a particular political philosophy. Assuming, however, that the State will limit prosecutions under this "contributing to the delinquency of a minor" statute to exhibition of films claimed to be obscene, the statute is entirely too imprecise to be constitutionally so applied. An example of a state statute precisely defining the term "harmful to minors" with a narrowly drawn standard of obscenity can be found in Ginsberg v. New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195.

The protection of children from obscene expression is certainly within the power of a state. Interstate Circuit, Inc. v. Dallas, *supra;* Ginsberg v. New York, *supra.* However, as the Supreme Court has noted, a statute that is unconstitutionally vague cannot be allowed

> " * * * for the salutary purpose of protecting children. The permissible extent of vagueness is not directly proportional to, or a function of, the extent of the power to regulate or control expression with respect to children. As Chief Judge Fuld has said:
>
> > " 'It is * * * essential that legislation aimed at protecting children from allegedly harmful expression— no less than legislation enacted with respect to adults—be clearly drawn and that the standards adopted be reasonably precise so that those who

are governed by the law and those that administer it will understand its meaning and application.' "

*Inter Circuit, supra,* 390 U.S. at 689, 88 S.Ct. at 1306, quoting People v. Kahan, 15 N.Y.2d 311, 313, 258 N.Y.S.2d 391, 206 N.E.2d 333, 335 (1965).

This Court fully appreciates the concern and desire of the State to protect its minors by prohibiting their viewing movies which are obscene. The Supreme Court has expressly sanctioned such protection of minors in *Interstate Circuit* and *Ginsberg.* A state, however, may not use a vague and imprecise "contributing to the delinquency of a minor" statute to protect its minors from such allegedly harmful expression. *Compare* Grove Press v. Philadelphia, E.D.Pa. 1969, 300 F.Supp. 281, 286–288. For this reason, Alabama Act No. 250, as amended by Alabama Act No. 100, cannot be constitutionally applied to the exhibition of a motion picture film.

(6) Should any of the State prosecutions be temporarily enjoined?

In these cases criminal prosecutions are pending against:

Johnny Moses – Recorder's Court of City of Tuscaloosa;

Frank L. Thompson, Jr. – Bessemer County Court;

T. W. Tidmore – Recorder's Court, City of Birmingham;

L. J. Pepper – Dallas County Court;

William A. Metcalfe – Montgomery County Circuit Court.

In 2898–N there is no showing in either the complaint or briefs that criminal prosecution has begun against Cecil Quarles, Intervenor. However, in his prayer for relief, Quarles asks this Court to enjoin and restrain the State from proceeding with the prosecution of Cecil Quarles. Though it is not clear, we assume that the State prosecution in fact has begun.

The federal courts will normally refrain from granting equitable relief from state criminal prosecutions on the basis of the doctrine of abstention or on the basis of the comity necessary for the successful functioning of our federal system of government. Railroad Comm'n of Texas v. Pullman Co., 1941, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 318, 324–327, 63 S.Ct. 1098, 87 L.Ed. 1424. However, the outstanding exception to this is the area of first amendment freedoms. The courts have recognized that the exercise of these freedoms is subject to irreparable injury when unlawful criminal prosecution is threatened or maintained. Dombrowski v. Pfister, *supra*; Machesky v. Bizzell, 5 Cir. 1969, 414 F.2d 283; Sheridan v. Garrison, 5 Cir. 1969, 415 F.2d 699. In *Dombrowski,* the Supreme Court, in holding that bad faith enforcement of state law constitutes a ground for federal equitable relief from state court criminal proceedings, stated that the abstention doctrine

"is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities."

380 U.S. at 489–490, 85 S.Ct. at 1122. *Dombrowski* thus holds that either bad faith enforcement of a statute or the unconstitutionality on its face of a statute regulating freedom of expression will justify and require federal equitable relief from state criminal prosecutions. Either ground involves avoiding the "chill" on the exercise of first amendment freedoms protected by the first amendment:

"So long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one. Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression."

380 U.S. at 494, 85 S.Ct. at 1125.

In *Dombrowski*, the state prosecutions had not begun when the complaint was filed in federal court. Thus, the Court did not have to resolve the question whether or not suits under 42 U.S.C.A. § 1983 come under the "expressly authorized" exception of the federal anti-injunction statute.[26] 380 U.S. at 484, 85 S.Ct. 1116, n. 2. After its decision in *Dombrowski,* the Supreme Court was confronted with a request for injunctive relief against a state criminal prosecution, that, unlike the prosecution in *Dombrowski,* had already begun. Although the district court held that 28 U.S.C.A. § 2283 was a bar to enjoining a suit that had already been filed, the Supreme Court refused to grant injunctive relief on the grounds that *Dombrowski* relief could not be granted in light of the facts of the case. Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, aff'g 262 F.Supp. 873 (S.D.Miss. 1966). Thus the Supreme Court has not decided the question of whether or not § 2283 is a bar to injunctive relief in meritorious *Dombrowski* cases when suit has already begun in the state courts.

Two recent Fifth Circuit cases have held that § 2283 is not a bar even though the state proceeding has begun when the federal action begins. Machesky v. Bizzell, *supra* (enjoining state court order prohibiting plaintiffs from performing numerous activities related to picketing and demonstrations); Sheridan v. Garrison, *supra* (enjoining state criminal proceedings in which prosecutions had been filed but before any trial or hearing had begun). The court in both cases eliminated the question whether § 1983 or *Dombrowski* created an "express exception" to § 2283 and reached its decision on the narrower basis of the comity nature of § 2283 itself. As the court in *Machesky* stated:

"Our decision is grounded on the premise that § 2283 is non-jurisdiction-al in that it is no more than a statutory enactment of the principle of comity for application in the relationship between federal and state courts. As such, it is to give way in those extraordinary cases where the federal injunction is necessary to vindicate clear First Amendment rights."

414 F.2d 287; *see* Sheridan v. Garrison, *supra* at 704. In the context of enjoining state criminal prosecutions, the *Sheridan* court concluded

" * * * that in the context of first amendment rights under § 1983 and *Dombrowski*, § 2283 cannot be considered an absolute bar to the type of relief here requested, even though it is requested against a pending criminal prosecution.

　　*　　　*　　　*　　　*　　　*　　　*

" * * * § 2283 cannot be considered a bar whenever injunctive relief is the only way to avoid 'grave and irreparable injury,' whatever the form of the state proceeding that threatens the injury. *Dombrowski* indicates that a severe chilling effect on the exercise of first amendment freedoms constitutes sufficient irreparable injury, in and of itself, to supersede comity * * *."

414 F.2d at 705.

Thus relying on *Dombrowski, Machesky* and *Sheridan,* we should enjoin all state criminal prosecutions under the 1909 Alabama statute (Section 374, Title 14, Alabama Code of 1940), which is unconstitutional on its face for being overbroad.

Since we have held Birmingham Ordinance 67–2 to be constitutional on its face and have found the defendants not guilty of bad faith prosecution, criminal prosecution of plaintiffs under Ordinance

---

26. 28 U.S.C.A. §§ 2283 provides that:
　"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

67–2 cannot be enjoined. Dombrowski v. Pfister, *supra.*

Since we have made similar holdings with respect to Section 374(4), Title 14 of the Alabama Code, and have held that statute not so clearly inapplicable to the exhibition of motion pictures that prosecution under it would amount to invoking the statute in bad faith, criminal prosecutions against plaintiffs under Section 374(4), Title 14 of the Alabama Code cannot be enjoined.

■■■ Plaintiff Metcalfe, as discussed above, is charged with contributing to the delinquency of minors under Alabama Act No. 250, as amended Act No. 100. As heretofore stated, we hold that this statute cannot be constitutionally applied to the exhibition of a motion picture film. The Supreme Court in *Dombrowski,* in enjoining state prosecutions, spoke in terms of a statute being unconstitutional on its face. For the purpose of enjoining state prosecutions, however, we do not believe there is any difference in a statute being unconstitutional on its face and one being so clearly unconstitutional as applied to the particular mode of expression here involved (*i. e.,* exhibiting motion picture film). Either defect results alike in a chilling of the exercise of first amendment rights. Therefore, the prosecutions of plaintiff Metcalfe under Alabama Act 250, as amended by Alabama Act 100, should be enjoined.

For the reasons expressed in the foregoing opinion, it is ordered, adjudged and decreed by the Court:

A. That, since the films of the plaintiffs heretofore described and presently in this Court's custody were both unconstitutionally seized and unconstitutionally withheld, the Clerk of this Court, at any time after the expiration of ten (10) days from the date of this order, shall deliver such films upon demand to the respective plaintiffs or their attorneys;[27]

B. That the temporary injunction prayed for in case hereinabove styled No. 2898–N insofar as it relates to the continued prosecution of the plaintiff T. W. Tidmore under a charge of having violated Birmingham Ordinance 67–2 is hereby denied;

C. That the temporary injunction prayed for in each of the above-styled cases insofar as it relates to the prosecution of any of the plaintiffs under a charge of having violated section 374(4), Title 14 of the Alabama Code, Recompiled 1958, pocket supplement, is hereby denied;

D. That the State and local officers, agents and employees named as defendants in each of these cases are enjoined and restrained temporarily and until the further order of this Court:

(1) from hereafter seizing any motion picture film of the plaintiffs, or any of them, in use for exhibition to

---

27. The ten-day period will allow defendants an opportunity to file an application for stay of injunction pending appeal under Rule 8 of the Federal Rules of Appellate Procedure.

 In ordering return of the films to plaintiffs, this Court is aware of two recent cases which held that films, although unconstitutionally seized, were to be returned to state officials for reasonable use in the preparation and trial of charges pending in state courts. Tyrone, Inc. v. Wilkinson, 4 Cir. 1969, 410 F.2d 639, cert. denied 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449; Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202. The court in *Tyrone* specifically refused to express an opinion on the films' admissibility in evidence in the state courts. 410 F.2d at 641, n. 4. However, we do not agree with this procedure. The films were unconstitutionally seized and, as the fruits of an illegal seizure, cannot be used by state officials in preparation for state prosecution. See Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Davis v. Mississippi, 1969, 394 U.S. 721, 723, 724, 89 S.Ct. 1394, 22 L.Ed.2d 676. Therefore, we have ordered that all films be returned to plaintiffs.

present and/or future audiences without a valid warrant authorizing such seizure, issued by a court of competent jurisdiction, the validity of such a warrant to be determined by the principles heretofore expressed in the foregoing opinion;

(2) from holding any such motion picture film, which has been thus validly seized without a prior adversary hearing, for longer than a reasonable specified brief period theretofore fixed by statute or authoritative judicial construction within which an adversary hearing must be conducted and the obscenity *vel non* of the film judicially determined or the film must be returned to the exhibitor;

(3) from proceeding with any presently pending prosecution or instituting and proceeding with any future prosecution of the plaintiffs, or either of them, under Section 374, Title 14, Alabama Code of 1940.

E. That the State and local officers, agents and employees named as defendants in the case hereinabove styled No. 2900–N are enjoined and restrained temporarily and until the further orders of this Court from proceeding with any presently pending prosecution, or instituting and proceeding with any future prosecution of the plaintiffs in No. 2900–N, or either of them, for a crime involving the exhibition of a motion picture film, under Act No. 250, Acts of Alabama 1959, Vol. 1, p. 810, as amended by Alabama Act No. 100, Acts of Alabama 1965, Vol. 1, p. 152, or either of said statutes.

F. All other matters are reserved subject to the further jurisdiction of this Court.

JOHNSON, District Judge (specially concurring):

I concur in the opinion and decree we are now entering in these cases. However, my concurrence in that part of the opinion on the question of whether an adversary hearing is necessary before seizure is with reservations. We are unanimous in our views that the seizures of the films by the Alabama authorities in each of the cases now before us was unconstitutional according to any known legal standards. By reason of this finding we order the films returned to the owners. Since we have held the seizures unconstitutional, in my opinion it is not necessary—or even appropriate—to undertake to render an advisory opinion (as the Court does on pages 812 and 813 of the opinion) outlining the possible procedures that may be followed in future instances when films are to be seized. My understanding of the holdings of the Supreme Court in Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127; Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313; Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; and Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460, leads me to the conclusion that the advisory dictum of this Court's opinion may be erroneous. However, since I do consider that part of this Court's opinion gratuitous dictum, and with this clarification, I concur.

PITTMAN, District Judge (dissenting in part).

I concur in the opinion and decree with the exception of the unconditional release in Case No. 2898–N of the films seized at the following theaters: 80 Drive-In, Inc., Selma, the Festival Cinema, Birmingham, the Auto Movies #1, Jefferson County, and the Etowah Art Center, Attalla. I dissent from this portion of the decree.

I concur in the release of the films to the plaintiffs, but I would order the plaintiffs to deliver to the defendants' prosecuting attorneys, upon the request of the defendants respectively, with reasonable notice to the plaintiffs, one print of each of the films seized for the use in the preparation and trials of the criminal cases involving such films now pend-

**824**

ing in the respective courts. On the question of releasing, I would follow Metzger v. Pearcy, 7th Cir. 1968, 393 F.2d 202, and which is partially followed by Tyrone, Inc. v. Wilkinson, 4th Cir., 1969, 410 F.2d 639, supra, footnote 27, p. 1213 of this majority opinion.

The use of these films unconstitutionally seized presents the question of whether the doctrine "fruit of the poison tree" is applicable. I do not think so. We have held these seizures and pending charges were done in good faith. At the time of the seizures there had not been a clear pronouncement by the Fifth Circuit or the United States Supreme Court on seizures of films by law enforcement officers, after full viewing, incident to an arrest for an offense committed in their presence.

These films were publicly advertised, publicly exhibited to thousands of persons, including the seizing officers. The projection of these films and the sources of the projections were in obvious view of the seizing officers and hundreds of others present at the theaters at the time of their seizures. There was no invasion of the privacy of an individual's person, his home, sanctuary, or property in the classic sense of searches without a search warrant, but the seizures were incident to arrests. There are no benefits accruing to the prosecution or detriments to those criminally charged by reason of evidence obtained which was not known to be in their possession or undisclosed before the seizures.

As we have attempted to accommodate and resolve the problem of suppression in the name of the law in the sensitive area of First Amendment rights in a realistic manner, we should examine the other side of the coin and accommodate and realistically resolve problems resulting from our rulings in order that the public may have its valid laws effectively enforced.

Our resolution should be equitable to all concerned. We have said to the defendants that you cannot seize films as you did in these instances in the future. I would say to the plaintiffs in this case, the defendants have the right to the use of these films in these pending prosecutions. I believe the courts not only should be concerned with sound legal theory, but also should be concerned with sound practical applications of legal theories in an equitable manner where existing sound legal theories come into conflict and are resolved in a particular case.

In all likelihood, these films will be removed from the state. It is highly doubtful the defendants can obtain them except by the acquiescence of the owners-plaintiffs, which is unlikely. In the event of plaintiffs' objections, difficult legal problems will arise by reason of them being beyond the effective process powers of the state and other defendants which are probably insurmountable.[1]

I. In a robbery case on a motion for a new trial for a crime which occurred in Birmingham, Alabama, concerning witnesses in Houston, Texas, the court stated: "The court has no power to compel the attendance of an out of state witness, * * *. Title 15, Sections 297–300, Code of Alabama, 1940; * * *." Argo v. State, 42 Ala.App. 454, 168 So.2d 19, at p. 23, certiorari to Supreme Court of Alabama denied 277 Ala. 177, 168 So.2d 23.
Where it appeared that witness had departed the state, trial court in criminal prosecution properly refused defendant's motion for the issuance of an at-

tachment for the witness [to compel attendance]. Inman v. State, 39 Ala.App. 496, 104 So.2d 448.
Code of Alabama 1940, Title 7, Sections 426, 487, 489, are apparently applicable in criminal proceedings (although these sections are set out in a chapter under civil procedures). Strange v. State, 43 Ala.App. 599, 197 So.2d 437 at p. 441, 442.
"A 'subpoena duces tecum' * * * commands a person who has in his possession or control some book or paper * * * to attend and produce it for use at the trial. * * * [Code (of Alabama) 1940, Title 7, Section 487]." Ex

## ORDER

**PER CURIAM.**

A preliminary injunction, based upon detailed findings of fact and conclusions of law, was made and entered in the above-captioned cases on September 30, 1969. The members of the panel constituting the three-judge court in this case, after determining that it would be appropriate to conduct an in-chambers conference with the attorneys representing the parties, directed that such a conference be held. Pursuant to said directive, the attorneys representing the parties in these cases and the judges constituting the panel in said cases met for an in-chambers conference December 18, 1969.

During the conference it was stipulated and agreed that any and all issues that were not specifically decided by this court in the opinion and order of September 30, 1969, were waived. This waiver specifically includes a claim for damages by the plaintiffs in 306 F.Supp. 802. It was further agreed by the attorneys representing the parties in these cases, without any waiver as to the positions heretofore taken by the parties upon the issues involved, that the preliminary injunction issued September 30, 1969, could be enlarged without further proceedings into a permanent injunction.

Accordingly, it is ordered that the preliminary injunction made and entered in the above-captioned cases September 30, 1969, be and the same is made permanent.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against each of the parties incurring same.

parte Hart, 240 Ala. 642, 200 So. 783. "The proper procedure by which the production of the papers may be required of a person who is not a party to the cause is by a subpoena duces tecum. Code [of Alabama] 1940, Title 7, Section 489." Ex parte Monroe County Bank, 254 Ala. 515, 49 So.2d 161, 23 A.L.R.2d 856.